RAYMOND J. BERGERON-DAVILA,

                      Plaintiff,

v.                                                      Case No. 24-cv-720-pp

LT. MARCUS KING, *et al.*,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYING PLAINTIFF'S MOTION FOR ORDER (DKT. NO. 7), GRANTING PLAINTIFF'S MOTIONS FOR ORDER (DKT. NOS. 11, 16), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 12) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Plaintiff Raymond J. Bergeron-Davila, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1. The order also resolves the plaintiff's motions for orders, dkt. nos. 7, 11, 16, and motions for preliminary injunction and temporary restraining order, dkt. no. 12.

**I.**     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 15, 2024, the court ordered the plaintiff did not have to pay an initial partial filing fee and gave him until August 16, 2024, to voluntarily dismiss the case. Dkt. No. 10. The plaintiff did not request to dismiss the case. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on April 22, 2024, he was in the restrictive housing unit at Green Bay when he began to cut himself. Dkt. No. 1 at ¶2. Defendant Officer Palacios allegedly first discovered the plaintiff cutting himself and Palacios "walked off on plaintiff." Id. at ¶5. The plaintiff states that defendant Officer Nevue arrived on the scene, the plaintiff confirmed his intention to finish cutting himself, Nevue sent defendant Lieutenant King to the plaintiff's cell and Neveu left. Id. at ¶6. King allegedly saw the plaintiff cutting and bleeding, and heard the plaintiff "state his intent to fin[]ish cutting himself (etc. . . )," but King departed. Id. at ¶7.

The plaintiff alleges that after King left, other "Officer Doe Defendants" saw the plaintiff or heard his suicidal statements but disregarded the plaintiff and walked off. Id. at ¶8. The plaintiff states that at some point, King returned

3

to the plaintiff's cell front and the plaintiff reiterated his intent to continue to kill and cut himself. Id. at ¶9. The plaintiff allegedly gave King "a very lethal weapon made of metal," and told King he had more metal. Id. King allegedly told defendant Officer Cortez to stay at the plaintiff's cell front and watch him, and King left again. Id. at ¶10. The plaintiff states that he used the remaining pieces of his weapon (eyeglasses filed down to a knife point) and continued to cut himself severely. Id. at ¶11. He allegedly was bleeding everywhere and was "now up to the point of making a total of 7 ser[]ious deep slices to his upper and lower arm, and defendan[t] C/O Cortez just stood and watch[ed] plaintiff bleed continuously and actively cut, for like 30 minutes straight[]." Id. The plaintiff alleges that at some point, Cortez left. Id. The plaintiff states that King had told him that the plaintiff would not be put on "OBS status" (presumably, observation status) per PSU Defendant Does 1-3. Id. at ¶12.

The plaintiff alleges that the defendants who walked off on the plaintiff's "known and acknowledged suicide activity" disregarded his suicide attempt. Id. at ¶13. He states that from 2:00 p.m. until 6:00 p.m. on April 22, 2024, he was seen "on and off cutting himself & bleeding with large amounts of blood on the floor." Id. The plaintiff states that defendant Walker passed his cell, saw the "plaintiff's dripping cuts, and viewed plaintiff's meat hanging being slices off plaintiff, that c/o Walker showed a very horrified and worried gesture and cried out like, in a surpri[s]ed utterance sound, called something in his walkie talkie got a response and walked off on plaintiff[.]" Id. at ¶14.

The plaintiff alleges that with his injuries from his seven wounds and loss of blood, he felt cold, weak and very tired so he "ball[ed] up under his blanket to go to sleep, feeling very ill and yet, still suicidal, with his we[a]pons still on him." Id. at ¶15. Before the plaintiff laid down, he allegedly tried to tape

4

his wounds closed "in a homemade ster[]i-strip fashion[.]" Id. at ¶17. He states that he fell asleep, and that blood was still seeping out of his wounds somewhat. Id.

The plaintiff claims that the defendants violated his constitutional rights because they walked away from him when they knew he was attempting to self-harm and/or attempt suicide. Id. at ¶¶20-21. For relief, he seeks compensatory and punitive damages. Id. at 17.

    C.    Analysis

Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege that: (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "All agree that suicide is an objectively serious medical condition . . . [and] prison officials cannot intentionally disregard a known risk that an inmate is suicidal." Lord, 952 F.3d at 904 (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019)). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a substantial risk of harm." Petties, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Lisle,

933 F.3d at 716-17 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

Liberally construing the complaint's allegations, the court will allow the plaintiff to proceed on an Eighth Amendment claim against defendants Palacios, King, Cortez, Walker and CO John Does 4-8 based on allegations that they saw the plaintiff cutting himself in his cell and did not help him. At this early stage, the plaintiff also may proceed against PSU John Does 1-3 for allegedly not allowing the plaintiff to be placed on observation status.

The plaintiff has not stated a claim against defendant Nevue because he alleges that when Nevue saw him cutting himself, he sent King to the plaintiff's cell. Nevue's alleged action of leaving the plaintiff's cell does not state a claim because the plaintiff says that Nevue got help for the plaintiff before he left. The plaintiff also has not stated a claim against defendant Ziggler. The plaintiff names Ziggler in the complaint caption but the body of the complaint does not include any allegations regarding Ziggler. The court will dismiss Nevue and Ziggler.

### III. Plaintiff's Motions for Orders (Dkt. Nos. 7, 11, 16)

The plaintiff filed a document titled "Motion for Order," in which he requests that his institution and the Wisconsin Department of Justice (DOJ) preserve videos from the date of the incident described in the complaint. Dkt. No. 7 at 2. He states that he has made requests to prison staff to preserve the video evidence, but that the prison seems to have ignored his requests. Id. at 1-2. The plaintiff provided copies of the requests that he submitted to prison staff on May 1, 2024, requesting that staff preserve videos of the April 30, 2024 incident. Dkt. No. 7-1 at 6-9; Dkt. No. 1-1. The duty to preserve evidence arises when a reasonable party would anticipate litigation. See Trask-Morton v. Motel

6

6 Operating L.P., 534 F.3d 672, 681 (7th Cir. 2008). After the court issues a scheduling order, the plaintiff may request the video evidence from the defendants. If the video has not been preserved, the plaintiff may seek relief under Federal Rule of Civil Procedure 37(e). The court will deny the plaintiff's motion for the court to order his institution and the DOJ to preserve the evidence.

The plaintiff filed two additional documents titled "Motion for Order." Dkt. Nos. 11, 16. Both motions ask the court to screen the plaintiff's complaint. This order screens the complaint and addresses the pending motions. The court will grant the plaintiff's motions.

### IV. Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 12)

Finally, the plaintiff filed a document titled "Mootion for Preliminary Injunction Request and Motion for TRO," in which he raises several issues. Dkt. No. 12. The plaintiff states that he is under imminent danger because the defendants saw him with weapons to harm himself, or knew he had them, but on October 21, 2024 walked off repeatedly on him. Id. at 2-3. He states that he has a problem with cutting and suicide ideations and that the defendants know this, yet they "cherry-pick when or where they choose to respond to plaintiff's suicide activities." Id. at 3. The plaintiff asserts that the defendants leave him with sharpened pieces of metal while he's on suicide watch. Id. He asks the court to order the defendants "to not just leave and walk off" when an incarcerated individual shows a weapon while on suicide observation status. Id. at 4. The plaintiff also asks the court to order that when the defendants observe the plaintiff cutting himself, they should take the weapon, search the plaintiff and search the cell instead of leaving him alone with the weapon. Id. And he asks the court to order him to be separated from defendant King and

7

PSU Amy Woolf because they have a history of leaving him on observation status with weapons. Id. at 5.

The plaintiff states that defendant King removed part of his pants to show the plaintiff the elephant tattoo on King's leg area, contrary to Department of Corrections policy. Id. at 6. The plaintiff asserts that this behavior scared him "in a PREA type of way[]" and that separation from King would prevent these inappropriate behaviors. Id. at 7. The plaintiff also alleges that on October 23, 2024, King watched the plaintiff sit on the toilet and tried to engage him in conversation. Id. The plaintiff states that he told King that he was using the toilet, but that King still tried to talk to him. Id. at 8.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) plaintiff will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

Because the plaintiff is incarcerated, the scope of the court's authority to issue an injunction is limited by the Prison Litigation Reform Act ("PLRA"). See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff has another case pending in this court in which the court ordered the defendants to respond to the plaintiff's motion for preliminary injunction; in that motion, the plaintiff claimed that Green Bay Correctional Institution had a "walk away rule" on him when he was self-harming. Bergeron-Davila v. Marquez, Case No. 23-cv-1260-pp (E.D. Wis. March 4, 2024), Dkt. No. 24 at 5-6 (Court's Order Directing Defendants to Respond to Motion). In that case, the defendants' response to the plaintiff's motion for injunctive relief included declarations from Lieutenant King and Dr. Martha Breen-Smith describing prison policy regarding incarcerated individuals' self-harm and suicide attempts as well as steps that have been taken to address the plaintiff's actions. Id. at Dkt. Nos. 30, 31. The court denied the plaintiff's motion for injunctive relief, stating in part:

> The plaintiff has not established that Green Bay has a "walk away" policy under which staff walk away from him while he is engaging in self-harm. The defendants have explained that when the plaintiff (or any other incarcerated individual) engages in self-harm, staff first ask him to stop. If he does not stop, the staff member may

9

> have to temporarily leave the cell to alert other staff members and/or obtain security tools, but this does not mean the staff member is ignoring the plaintiff. The plaintiff references a video that he says will support his position, but he does not explain what the video will show. Again, just because a staff member leaves the plaintiff's cell while he is engaging in self-harm does not mean that the institution has a policy of ignoring the plaintiff while he harms himself. Institution staff have security issues to consider before removing any incarcerated person—including the plaintiff—from his cell and placing him in observation status. The court will deny the plaintiff's motion for injunctive relief.

Id., Dkt. No. 45 at 5.

In this case, the court has allowed the plaintiff to proceed on a claim based on his complaint allegations that the defendants walked off when he was cutting himself in his cell with eyeglasses on April 22, 2024. In his motion for injunctive relief, the plaintiff asserts that he cut himself on October 21, 2024, and that staff walked off on him on that date. The relief that the plaintiff requests—that staff not walk off on the plaintiff and leave him in a cell with a weapon when they see him self-harming—is similar to the relief sought in the plaintiff's motion for injunctive relief in his other case. As explained above, the plaintiff's institution does not have a policy to walk away from the plaintiff when he is self-harming. The plaintiff has not shown that he is entitled to injunctive relief based on the incident he describes took place on October 21, 2024 (an incident he did not allege in his complaint). The plaintiff has not established a reasonable likelihood of success on the merits of his Eighth Amendment claim. Regarding his other issues involving King, the plaintiff has not requested specific relief related to these issues. Even if he had, the court could not grant him injunctive relief because those issues are not related to the Eighth Amendment claim on which he is proceeding in this case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, Case No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec 5, 2013). The

10

court will deny the plaintiff's motion for temporary restraining order and preliminary injunction.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DENIES** the plaintiff's motion for order. Dkt. No. 7.

The court **GRANTS** the plaintiff's motions for order. Dkt. Nos. 11, 16.

The court **DENIES** that plaintiff's motion for preliminary injunction and temporary restraining order. Dkt. No. 12.

The court **DISMISSES** defendants CO Nevue and CO Ziggler.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Lt. Marcus King, CO Palacios, CO Walker and CO Cortez. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$350** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 20th day of February, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

13

Case 2:24-cv-00720-PP   Filed 02/20/25   Page 13 of 13   Document 17